<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FEDWAY ASSOCIATES, INC., | |
| Plaintiff, | Civil Action No. 21-19604 (SDW) (JBC) |
| v. | **OPINION** |
| WINE, LIQUOR & DISTILLERY WORKERS' UNION LOCAL 1-D, UCFW, | |
| Defendant. | September 28, 2022 |

**WIGENTON**, District Judge.

Before this Court is Defendant Wine, Liquor & Distillery Workers' Union Local 1-D, UCFW's ("Defendant" or the "Union") Motion to Compel Arbitration (D.E. 46) brought pursuant to 9 U.S.C. § 4, as well as Plaintiff Fedway Associates, Inc.'s ("Plaintiff" or "Fedway") Motion for Summary Judgment (D.E. 47) brought pursuant to Federal Rule of Civil Procedure ("Rule") 56 and Plaintiff's Motion for Sanctions (D.E. 48) pursuant to Rule 11.  Venue is proper pursuant to 28 U.S.C. § 1391 and 31 U.S.C. § 3732(a).  This opinion is issued without oral argument pursuant to Rule 78.  For the reasons stated herein, Defendant's Motion to Compel Arbitration is **DENIED**, Plaintiff's Motion for Summary Judgement is **GRANTED**, and Plaintiff's Motion for Sanctions is **DENIED**.

## I.   <u>BACKGROUND AND FACTUAL HISTORY</u>

Plaintiff Fedway is engaged in the business of wholesale distribution of liquor to retail customers and employs several hundred employees at its warehouse facility ("Facility") located in

Elizabeth, New Jersey.  (D.E. 47-2 at ¶¶ 2–3.)[1]  Defendant, the Union, is a labor organization that represents warehouse employees who work at Fedway's Facility.  (D.E. 47-2 at ¶ 6.)  For over thirty years, Fedway and the Union have been signatories to successive collective bargaining agreements that set forth the terms and conditions of employment for Fedway's warehouse employees.  (D.E. 47-2 at ¶ 10.)  Fedway and the Union's collective bargaining agreement ("CBA")[2] contains an arbitration provision, which provides, in pertinent part, that: "[t]he parties agree to submit solely to arbitration all disputes, grievances, or issues that may arise between them involving the interpretation or application of this Agreement during the term thereof, or upon any subsequent renewal, reopening or modification thereof . . . ."  (D.E. 47-2 at ¶¶ 11–12; D.E. 47-10 at 20; D.E. 49 at ¶ 1, 6.)  The CBA further provides that employees can be terminated for "good and just cause."  (D.E. 47-2 at ¶ 16;  D.E. 47-10.)

On October 21, 2019, Donald Walker ("Walker"), a bargaining unit employee at Fedway's Facility, was involved in a work-related accident.  (D.E. 47-2 at ¶¶ 14–15; D.E. 49 at ¶ 2.)  As a result, Walker underwent a drug and alcohol test, testing positive for marijuana.  (D.E. 47-2 at ¶ 15.)  Subsequently, Walker, the Union, and Fedway executed a Last Chance Agreement ("LCA") on November 24, 2019, and December 11, 2019, respectively.  (D.E. 47-2 at 17; D.E. 47-11; D.E. 49 at ¶ 3.)  The LCA specifically states that "[u]pon your return to work, you will be subject to periodic unannounced testing at Fedway's discretion for a period not to exceed two (2) years. Should you again test positive for either drugs or alcohol after being permitted to return to work, you will be discharged."  (D.E. 47-2 at ¶ 18, D.E. 47-11 at 1.)  The LCA further states that "[t]his

[1] Record citations in this opinion are generally to Plaintiff's Local Rule 56.1 Statement of Material Facts Not in Dispute (D.E. 47-2), Defendant's Response to Plaintiff's Statement of Material Facts and Counterstatement of Material Facts (D.E. 49), Plaintiff's Response to Defendant's Counterstatement of Material Facts (D.E. 53-1), as well as record citations contained therein.

[2] The parties' current CBA is effective for the period of November 1, 2018, through October 31, 2023.  (D.E. 49 at ¶ 1.)

constitutes a full settlement of this matter with the understanding that you have been placed on a

final warning which will be reflected in your personnel file. Failure to comply with any of the

terms or conditions set forth above will result in your immediate discharge." (D.E. 47-2 at ¶ 19,

D.E. 47-11 at 1.)  To confirm that Walker accepted the terms and conditions of his reinstatement,

he agreed and signed the following:

> I, Donald Walker, accept the terms and conditions of my return to work and continued employment. I understand that if I refuse to submit to a random drug test or test positive for a controlled substance, I will be subject to immediate discharge without recourse to grievance or arbitration from my union.

(D.E. 47-2 at ¶ 20; D.E. 47-11 at 3; D.E. 49 at ¶ 4.)

On June 21, 2021, Fedway was notified by its alcohol/drug screening vendor that Walker's

June 14, 2021 test was positive for marijuana.  (D.E. 47-2 at ¶ 22.)  On June 23, 2021, Fedway

notified Walker and the Union by letter that his employment was terminated pursuant to the terms

of his LCA.  (D.E. 47-2 at ¶ 23, D.E. 47-12; D.E. 49 at ¶ 8.)  Fedway's June 23, 2021 letter

reiterated, *inter alia*, that "[Walker] signed a Last Chance Agreement acknowledging that [he]

would be discharged without recourse to grievance or arbitration from [his] union if [he] tested

positive for a controlled substance within a 2-year period" and that "under the provisions of the

[CBA], [Fedway] has decided to terminate [Walker's] employment."  (D.E. 47-2 at ¶ 23.)

Thereafter, the Union filed a grievance ("Grievance") contesting, *inter alia*, Walker's

termination and stating that "Don Walker was [i]llegally terminated based on a 'random' Drug test

according to an Out-Dated Drug Testing Policy. It is the Company's responsibility to update any

policy when there is a change in State Law, which would supersede its policy. Random Drug

testing is now 'Restricted' in the State of N.J."  (D.E. 47-2 at ¶ 25; D.E. 47-13; D.E. 49 at ¶ 8.)

On August 11, 2021, the Union submitted a Demand for Arbitration ("Demand") to the American

Arbitration Association ("AAA"), alleging that Fedway breached the CBA by terminating Walker's employment "without just cause" and demanded that arbitration be held in Manhattan, New York.  (D.E. 47-2 at ¶¶ 26–29.)  On August 13, 2021, Fedway denied the Grievance.  (D.E. 47-2 at ¶ 26.)  On that same date, Fedway's counsel emailed the AAA stating, in pertinent part, that "the Union previously agreed that [Fedway's] termination of Donald Walker is neither grievable or arbitrable, according to the express terms of the attached [LCA], which was fully executed by [Fedway], [the Union], and Donald Walker. . . . Given the parties' express agreement not to arbitrate Donald Walker's termination, AAA should not process [the Union's] Demand."[3] (D.E. 47-2 at ¶ 31; D.E. 47-6.)

## II.    PROCEDURAL HISTORY

Subsequently, on September 29, 2021, Fedway received the Union's demand letter pursuant to New York Civil Practice Law and Rules ("CPLR") §7503 ("CPLR 7503 Demand"). (D.E. 47-1 at 7.)  On October 18, 2021, Fedway filed a Verified Petition to Stay Arbitration in the United States District Court for the Southern District of New York ("SDNY"), seeking preliminary injunction staying Arbitration (Count One), transfer of the action to the United States District Court for the District of New Jersey (Count Two), permanent injunction of the Arbitration (Count Three), and declaratory judgment that the Union waived its rights to grieve or arbitrate (Count Four).  (D.E. 7.)  On October 26, 2021, Fedway filed an Order to Show Cause seeking a stay of the Arbitration and for an Order to transfer the action to the District of New Jersey.  (D.E. 15.)  On November 3, 2021, the Honorable Valerie E. Caproni, U.S.D.J. of the SDNY entered an Order granting Fedway's motion for preliminary injunction and transferred the matter to the District of New

---

[3] The AAA has not acknowledged receipt of the Union's Demand.  (D.E. 47-2 at ¶ 32; D.E. 49 at ¶ 13.)

Jersey.[4]  (D.E. 24.)   The Union then filed an Amended Answer to Fedway's Petition and a

Counterclaim to Compel Arbitration.  (D.E. 37.)  Thereafter, on January 2, 2022, Fedway filed an

Answer to the Union's Counterclaim to Compel Arbitration.  (D.E. 45.)  The Union later moved

to Compel Arbitration.  (D.E. 37, 46.)  On that same day, Fedway filed a Motion for Summary

Judgment seeking permanent injunction enjoining the Arbitration that the Union sought to

commence (Count Three) and declaratory judgment that the Union waived its rights to grieve or

arbitrate the matter in dispute when it executed the LCA (Count Four).[5]  (D.E. 47.)  Fedway also

moved for sanctions against the Union.  (D.E. 48.)  All subsequent briefing was timely filed.  (D.E.

50, 51, 53, 54, 55, 60.)

## III.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  The "mere existence of some alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there be no

genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A

fact is only "material" for purposes of a summary judgment motion if a dispute over that fact

"might affect the outcome of the suit under the governing law."  *Id.* at 248.  A dispute about a

---

[4] *See Fedway Assocs., Inc. v. Wine, Liquor & Distillery Workers Union Loc. 1-D, UFCW*, 2021 WL 7710199, *1 (S.D.N.Y. Nov. 3, 2021).  Judge Caproni held that the "LCA unequivocally waived the right to arbitrate, and courts have held, in instances with nearly identical language, that this removes the dispute from the realm of arbitrability." (D.E. 24 at 2–3.)  Judge Caproni further held that: (1) Fedway is "likely to suffer irreparable injury without injunctive relief" by "being compelled to arbitrate a dispute that is not arbitrable"; (2) "[the Union's] waiver of arbitration logically implies that it suffers no hardship by being prevented from doing something that it already waived the right to undertake," and (3) "it is in the public's interest to enforce the parties' contract as executed[,] because the Court finds that the contract as executed waived arbitration under the circumstances alleged."  (D.E. 24 at 3) (internal quotations omitted.)

[5] After Judge Caproni's November 3, 2021 Order granting preliminary injunction (Count One) and transferring the matter to the District of New Jersey (Count Two), the only remaining Counts in Fedway's Petition are Counts Three and Four.

material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof[,]" then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23. Furthermore, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate

6

the evidence and decide the truth of the matter, but to determine whether there is a genuine issue

for trial. *Anderson*, 477 U.S. at 249. The nonmoving party cannot defeat summary judgment

simply by asserting that certain evidence submitted by the moving party is not credible. *S.E.C. v.*

*Antar*, 44 F. App'x 548, 554 (3d Cir. 2002).

## IV.   DISCUSSION[6]

### A.

### The LCA Supersedes the CBA

Fedway argues that the Union waived its right to grieve or arbitrate Walker's discharge

when the Union entered into the LCA which expressly waived the Union's right to grieve or

arbitrate Walker's discharge if Walker refused to submit to a random drug test or tested positive

for a controlled substance. (*See generally* D.E. 47-1.) The Union, however, argues that the

threshold question of whether Walker in fact violated the LCA is arbitrable, even if the penalty is

not. (D.E. 46-1 at 5–13, *see generally* D.E. 50.) This Court considers the parties' arguments and

record evidence in turn and finds that the LCA unequivocally waived the Union's right to grieve

or arbitrate Walker's dispute.

The question of arbitrability is a judicial determination. *See, e.g.*, *First Options of Chicago,*

*Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). To determine whether a valid arbitration agreement

exists, we "apply ordinary state-law principles that govern the formation of contracts." *James v.*

*Glob. TelLink Corp*, 852 F.3d 262, 265 (3d Cir. 2017) (quoting *First Options*, 514 U.S. at 944).

---

[6] Plaintiff's motion for sanctions pursuant to Rule 11 is DENIED. Rule 11 "imposes on any party who signs a pleading, motion, or other paper . . . an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing." *Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.*, 498 U.S. 533, 551 (1991). Rule 11 sanctions should be issued "only in the 'exceptional circumstance', where a claim or motion is patently unmeritorious or frivolous." *Doering v. Union Cnty. Bd. of Chosen Freeholders,* 857 F.2d 191, 194 (3d Cir.1988) (quoting *Gaiardo v. Ethyl Corp.,* 835 F.2d 479, 483 (3d Cir.1987)). Defendant has set forth colorable arguments in this action. There is no indication of bad faith or unreasonable conduct on behalf of Defendant and its attorneys.

"Under New Jersey law, '[a]n agreement to arbitrate, like any other contract, must be the product of mutual assent, as determined under customary principles of contract law.'" *MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 402 (3d Cir. 2020) (quoting *James v. Glob. TelLink Corp*, 852 F.3d at 265). Accordingly, "[a] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute." *Granite Rock Co. v. Int'l Broth of Teamsters*, 561 U.S. 287 (2010) (citing *First Options of Chicago, Inc.*, 514 U.S. at 943). Deciding whether arbitration is required is a two-step process: "(1) Did the parties seeking or resisting arbitration enter into a valid arbitration agreement? (2) Does the dispute between those parties fall within the language of the arbitration agreement?" *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir. 1998).

"If a court determines that a valid arbitration agreement does not exist or that the matter at issue clearly falls outside of the substantive scope of the agreement, it is obliged to enjoin arbitration. If, on the other hand, the court determines that an agreement exists and that the dispute falls within the scope of the agreement, it then must refer the matter to arbitration without considering the merits of the dispute." *PaineWebber Inc. v. Hartman*, 921 F.2d 507, 511 (3d Cir. 1990) (citing *AT & T Technologies,* 475 U.S. 643, 649–50 (1986); *Beck v. Reliance Steel Prods. Co.,* 860 F.2d 576, 579 (3d Cir. 1988)). "Simply put, without an *agreement* to arbitrate, there can be no arbitration." *MZM Constr. Co., Inc.*, 974 F.3d at 397 (citing *Sandvik AB v. Advent Intern. Corp.*, 220 F.3d 99, 105, 107–108 (3d Cir. 2000)).

It is well settled that a last chance agreement's express waiver to grieve or arbitrate a dispute supersedes a collective bargaining agreement's conflicting provision because the last chance agreement removes the dispute from the realm of arbitrability. *See, e.g.*, *Sterrett v. Giant Eagle, Inc.*, 681 F. App'x 145, 149–50 (3d Cir. 2017) (holding that the district court correctly

8

concluded that the last chance agreement—signed after the employer and union executed their collective bargaining agreement—governed the employee's termination because the "LCA's express terms barring grievances and arbitrability did not give way to a presumption of arbitrability"); *Burns v. Salem Tube, Inc.*, 381 F. App'x 178, 182 (3d Cir. 2010) (holding that a last chance agreement imposing stricter attendance requirements on an employee than the relevant collective bargaining agreement superseded the collective bargaining agreement and set forth new terminable violations); *Rite Aid of Pennsylvania, Inc. v. UFCW, Local 1776*, 595 F.3d 128 (3d Cir. 2010) (affirming the district court's declaratory judgement that the underlying grievance was not arbitrable because the issue presented was outside the scope of the labor agreement's arbitration clause); *see also Price v. Shinseki*, Civ. No. 09-2492, 2012 WL 379952, at *3 (D.N.J. Feb. 6, 2012) (dismissing plaintiff's claims against his former employer because plaintiff had signed a last chance agreement that "expressly and knowingly waived his 'right to . . . bring an action against the [employer], its employees or its agents in any forum and before any administrative or judicial body involving issues related to his removal.")

The record evidence establishes that when the Union signed the LCA, it expressly and knowingly waived its right to grieve or arbitrate Walker's discharge.  (D.E. 47-11.)  As articulated in *Fedway Assocs., Inc.*, "[t]he LCA unequivocally waived the right to arbitrate, and courts have held, in instances with nearly identical language, that this removes the dispute from the realm of arbitrability." *Fedway Assocs., Inc.*, 2021 WL 7710199, at *1.  It is indisputable that the Union waived its right to pursue the remedies afforded in the CBA if Walker was discharged for "test[ing] positive for either drugs or alcohol after being permitted to return to work."  (D.E. 47-11 at 1–2.) The plain language of the LCA states: "I understand that if I refuse to submit to a random drug test or test positive for a controlled substance, *I will be subject to immediate discharge without recourse*

9

*to grievance or arbitration from my union*." (D.E. 47-11 at 2) (emphasis added). The LCA unambiguously demonstrates that the Union agreed to waive its CBA protections relative to the determination of the violation, as well as the propriety of the penalty imposed. (*Id.*) Contrary to the Union's assertion, the LCA sets forth who is to decide the threshold question of whether Walker has in fact committed a violation under the LCA. (D.E. 47-11 at 1–2.) Thus, the Union's argument that the "LCA does not preclude [the Union] from arbitrating violation issues" and that the LCA does not address who determines whether a violation has occurred, is without merit and insufficient to overcome the plain language of the LCA or its application to Walker's discharge. (D.E. 46-1 at 5–6.) Because Walker was discharged following a finding that he tested positive for a controlled substance in violation of the LCA and the Union's underlying grievance letter does not dispute that Walker tested positive for a controlled substance[7], the CBA and its provisions governing grievances/disputes is irrelevant. (*See generally* D.E. 47-13.) Indeed, the United States Supreme Court has clearly and repeatedly stated that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies,* 475 U.S. at 648 (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). Accordingly, this Court finds that the LCA expressly waived the Union's right to grieve or arbitrate Walker's discharge and superseded the CBA. Fedway's request for Declaratory Judgment determining that Walker's discharge is not arbitrable by the Union pursuant to the LCA is therefore granted and the Union's motion to compel arbitration is denied.

---

[7] To the extent that the Union argues that the New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act ("CREAMMA") nullifies Walker's positive test result for a controlled substance and automatically modifies the provisions in the CBA, the Union's argument is misplaced. (D.E. 50 at 6–7.) The accuracy of Walker's test results is not in dispute, as the Union's underlying grievance letter does not dispute that Walker tested positive for a controlled substance. Further, the Union has failed to demonstrate that CREAMMA requires the modification that it suggests. Moreover, the LCA is not a waiver of Walker's rights to pursue statutory or civil causes of action.

**B.**

**Permanent Injunction Enjoining Arbitration**

To seek a permanent injunction, a plaintiff must demonstrate: "(1) that it has suffered an irreparable injury; (2) that the remedies available at law, such as monetary damages, prove inadequate to compensate for that injury; (3) that the balance of hardships between the plaintiff and defendant favor equitable relief; and (4) that the public interest would not be disserved by a permanent injunction." *Chanel, Inc. v. Matos*, 133 F.Supp.3d 678, 689 (D.N.J. 2015) (quoting *eBay Inc. v. MercExchange, LLC,* 547 U.S. 388, 391 (2006)). Based upon the present record, Fedway has met the four-factor test for injunctive relief, and the Court grants permanent injunctive relief enjoining arbitration of Walker's discharge.

First, for the same reasons identified by this Court in Section IV(A) above, Fedway has demonstrated that it will suffer irreparable harm if it is compelled to arbitrate. "Irreparable injury is shown if 'a plaintiff demonstrates a significant risk that he . . . will experience significant harm that cannot adequately be compensated, after the fact, by monetary damages.'" *Ne. Auto-Marine Terminal v. Marine Warehouseman & Gen. Factory Workers Div. Loc. 1588 ILA AFL-CIO*, Civ. No. 08-2789, 2008 WL 2704238, at \*2 (D.N.J. July 9, 2008) (citing *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484 (3d Cir. 2000)). It is well-established that harm to a party would be irreparable if forced to arbitrate a claim one did not agreed to arbitrate. *See PaineWebber Inc.*, 921 F.2d at 514–15 ("[T]he harm to a party would be *per se* irreparable if a court were to abdicate its responsibility to determine the scope of an arbitrator's jurisdiction and, instead, were to compel the party, who has not agreed to do so, to submit to an arbitrator's own determination of his authority."). The plain language of the LCA unambiguously demonstrates that the Union expressly and knowingly waived its right to grieve or arbitrate Walker's discharge, thereby relinquishing

11

conflicting protections under the CBA.  (D.E. 47-11 at 1–2.)  As such, compelling Fedway to arbitrate a dispute that is not arbitrable is irreparable harm as a matter of law.  Second, if Fedway were forced to arbitrate a claim it did not agree to arbitrate, monetary damages would prove inadequate to compensate for the irreparable harm.  Third, the balance of hardships weighs in favor of Fedway.  The Union suffers no hardship by the issuance of permanent injunction because the Union expressly and knowingly waived its right to grieve or arbitrate Walker's termination if he refused to submit to a random drug test or tested positive for a controlled substance.  (*See generally* D.E. 47-1.)  As explained in *Fedway Assocs., Inc.*, "[the Union's] waiver of arbitration logically implies that it suffers no hardship by being prevented from doing something that it already waived the right to undertake, whereas [Fedway] would, under the law of this Circuit, suffer irreparable harm if it were required to proceed to arbitration under these circumstances."  *Fedway Assocs., Inc.*, 2021 WL 7710199, at *2.  As discussed above, Walker retains the right to bring statutory and/or civil causes of action against Fedway challenging his discharge.  (D.E. 47-11 at 1–2.)  Finally, it is in the public's interest to enforce the LCA as executed because Fedway, the Union, and Walker knowingly, fairly, and expressly negotiated the terms of the LCA prior to execution.  Accordingly, Fedway's application for permanent injunction enjoining the arbitration of Walker's discharge is granted[8] and the Union's motion to compel arbitration is denied.

## V.    CONCLUSION

Fedway's Motion for Summary Judgment seeking permanent injunction (Count Three) and declaratory judgment (Count Four) is **GRANTED**, the Union's Motion to Compel Arbitration is **DENIED**, and Fedway's Motion for Sanctions is **DENIED**.

---

[8] To the extent that the Union argues that the Norris LaGuardia Act, 29 U.S.C. §101 et seq. ("NLA") prohibits permanent injunction of arbitration in this matter, the Union's argument is misplaced.  The Union knowingly and expressly waived its rights to grieve or arbitrate the matter in dispute when it executed the LCA, thereby making the NLA inapplicable.

An appropriate order follows.

                                                   ___/s/ Susan D. Wigenton_____
                                             **SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:      Parties
           James B. Clark, III, U.S.M.J.